S. Burgess Williams, Bar No. 032916
Ariana Byrd, State Bar No. 034391
**ZINDA LAW GROUP, PLLC**
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
T: (480) 442-6990
F: (512) 580-4252
service@zdfirm.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **ANDREA BROOKS AND MARTINO ANDERSON,**  **Plaintiffs,**  vs.  **DHILLON BROTHERS, INC. AND JAGJIWAN SINGH,**  **Defendant.** | **COMPLAINT**  **(TORT – Motor Vehicle)** |

Plaintiff, by and through counsel undersigned, and for her Complaint against Defendant, alleges as follows:

## I.   JURISDICTION AND VENUE

1. Subject Matter Jurisdiction in the Court is proper on the basis of diversity of citizenship. Plaintiffs are residents of Texas. Defendant Jagjiwan Singh ("Defendant Singh") is a resident of California. Defendant Dhillon Brothers, Inc. ("Defendant Dhillon") is a corporation located in California and incorporated under the laws of the State of California. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2. Venue is proper in this Court because it is the judicial district in which a substantial part of

the events or omissions giving rise to the claim occurred. 28 U.S.C. 1391(b).

## II.     PARTIES

3. Plaintiff Andrea Brooks (hereinafter "Plaintiff Brooks") and at all times relevant hereto resided at 18712 Waltz Court, Austin, Texas 78738.

4. Plaintiff Martino Anderson (hereinafter "Plaintiff Anderson") and at all times relevant hereto resided at 18712 Waltz Court, Austin, Texas 78738.

5. Defendant Dhillon is a California corporation doing business in Arizona. Defendant Dhillon may be served by serving its registered agent for service of process, Jaskaranjit Singh, at 977 South Shelly Avenue, Fresno, California 93727.

6. Defendant Singh is an individual living in California. Defendant Singh may be served at his residence, 1940 Green Sands Avenue, Atwater, California 95301.

## III.     FACTS

7. On or about October 16, 2022, Plaintiffs were traveling eastbound on Interstate 40 near mile marker 225 in Coconino, Arizona in a U-Haul truck.

8. Eastbound Interstate 40 had two lanes of travel in the area relevant herein.

9. At the same time, Defendant Singh was driving a distance behind Plaintiffs in a 2020 Peterbilt tractor-trailer.

10. Defendant Dhillon owned the 2020 Peterbilt tractor-trailer and directed Defendant Singh to operate it at times relevant herein.

11. Defendant Singh was working in the course and scope of his employment with Defendant Dhillon at all times relevant herein.

12. Plaintiffs stopped on the shoulder because their U-Haul truck had mechanical difficulties.

13. Defendant Singh approached Plaintiffs from behind in the outside lane of eastbound Interstate 40.

14. Defendant Singh was distracted as he approached Plaintiffs.

15. Defendant Singh was fatigued as he approached Plaintiffs.

16. Defendant Singh veered out of the outside lane of travel onto the shoulder of eastbound Interstate 40.

17. Defendant Singh collided into the side of Plaintiffs' parked U-Haul truck.

18. Defendant Singh  following the collision.

19. Defendant Singh did not check on the well-being of Plaintiffs at any point following the collision.

20. Defendant Singh did not report the collision to law enforcement or first responders.

21. A witness observed the collision and reported it to law enforcement.

22. Officer Robertson from the Winslow Police Department located Defendant Singh's tractor-trailer at the Flying J truck stop next Exit 255 on Interstate 40 at approximately 5:43 pm.

23. Defendant Singh denied to Officer Robertson that he was involved in a collision.

24. Officer Robertson observed damage to the back ride side of Defendant Singh's trailer.

25. Trooper Berger issued Defendant Singh a citation for violating ARS 28-729.1, to wit, failing to maintain lane (driving on shoulder).

26. Defendant Singh did not maintain his lane in the moments leading up to the collision.

27. Defendant Singh drove on the shoulder in the moments leading up to the collision.

28. Defendant Singh was a professional driver at the time of the collision described herein.

29. At all times relevant herein, Defendant Singh was driving Defendant Dhillon's tractor-

trailer the way Defendant Dhillon trained him to drive.

30. As a direct and proximate result of Defendant Singh's collision into Plaintiffs, Plaintiffs suffered harms and losses in an amount to be determined at trial.

### IV.   COUNT 1 – NEGLIGENCE OF DEFENDANT SINGH

31. Plaintiffs replead the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

32. At all times relevant herein, Defendant Singh was operating a commercial motor vehicle transporting property in interstate commerce.

33. In order to undertake such actions, Defendant Singh is required to have, at a minimum, a valid commercial driver's license.

34. In order to undertake such actions, Defendant Singh is required to have, at a minimum, the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

35. The safe operation of commercial motor vehicles requires specialized knowledge, skill, and additional training not necessary for the safe operation of passenger vehicles because:

   a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

   b. commercial motor vehicles are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;

   c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in

        collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory; and

    d.    commercial motor vehicles pose more of a risk of causing injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory.

36. In order to undertake the safe operation of a commercial motor vehicle, drivers such as Defendant Singh must have knowledge and skills in many areas, including the following:

    a.    the procedures for safe vehicle operation;

    b.    the proper procedures for performing basic maneuvers such as maintaining lanes and space management;

    c.    the importance driving without distractions;

    d.    having a plan for dealing with hazards;

    e.    eliminating and avoiding distractions;

    f.    preventing driver fatigue; and

    g.    the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow.

37. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the well-known danger of not maintaining lanes, not having a plan for dealing with hazards, driving while distracted, driving while fatigued, and refusing to observe traffic conditions.

38. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that not maintaining lanes, not having a plan for dealing with hazards, driving while distracted,

driving while fatigued, and refusing to observe traffic conditions can cause a collision and resulting harms and losses.

39. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the foreseeable dangers of not maintaining lanes, not having a plan for dealing with hazards, driving while distracted, driving while fatigued, and refusing to observe traffic conditions.

40. Defendant Singh owed duties of ordinary care to Plaintiffs and other motorists on the roadway at all times relevant herein.

41. Defendant Singh's conduct as outlined above breached those duties through various acts and/or omissions, including the following, each of which singularly or in combination with others, constitute acts of negligence that were a direct and proximate cause of the occurrence in question and the resulting injuries or damages set forth herein:

    a. maintaining an unsafe distance from other cars;

    b. keeping an improper lookout;

    c. traveling at an unreasonable speed given the circumstances;

    d. making an untimely and improper application of his brakes;

    e. exhibiting inadequate driver attention;

    f. driving distracted;

    g. driving fatigued;

    h. taking improper evasive actions to avoid the collision;

    i. refusing to observe traffic conditions;

    j. improperly communicating his presence;

    k. refusing to properly manage space around his tractor-trailer; and

   l.  choosing to violate safety rules.

42. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs suffered severe harms and losses in an amount to be determined at trial.

43. Defendant Singh's careless, negligent, willful, wanton, reckless, and unlawful acts were the direct and proximate cause of the collision and Plaintiffs' resulting harms and losses.

### V. COUNT 2 – *RESPONDEAT SUPERIOR*

44. Plaintiffs replead the foregoing factual allegations as if herein quoted verbatim and set forth herein at length.

45. Without waiving the foregoing, in conjunction with, additionally and/or alternatively, Plaintiffs would further show this Court that Defendant Singh was in the course and scope of his employment with Defendant Dhillon at the time of this collision.

46. Under the doctrine of *Respondeat Superior*, Defendant Dhillon is responsible for Defendant Singh's negligent acts and omissions as alleged above and Plaintiffs' resulting damages.

### VI. COUNT 3 – NEGLIGENCE OF DEFENDANT DHILLON

47. Plaintiffs replead the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

48. At all times relevant herein, Defendant Dhillon operated as a commercial motor carrier.

49. In return for the privilege to operate commercial motor vehicles on the public roadways, prospective motor carriers must make certain safety related certifications and verifications.

50. Motor carriers such as Defendant Dhillon are required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain a United States Department of Transportation ("US DOT") number.

51. Each Form MCS-150 Defendant Dhillon submitted or will submit contains a Certification Statement whereby Defendant Dhillon declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations.

52. Motor carriers such as Defendant Dhillon are required to submit a Form OP-l to the Federal Motor Carrier Administration in order to receive interstate operating authority.

53. The Form OP-l Defendant Dhillon submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that Defendant Dhillon is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

54. The Form OP-l Defendant Dhillon submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that it has access to, and is familiar with, all applicable US DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

55. Each Form OP-l Defendant Dhillon submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, it:

    a. has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

    b. can produce a copy of the FMCSR;

    c. has in place a driver safety training/orientation program;

    d. is familiar with US DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and

   e. has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

56. Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations.

57. Reasonably safe motor carriers prevent unlicensed drivers from operating their commercial motor vehicles.

58. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

59. Reasonably safe motor carriers train and educate their drivers on the dangers of distracted driving and prohibit the practice in their commercial motor vehicles.

60. Reasonably safe motor carriers utilize information and training materials from industry associations and third-party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

61. The safe operation of commercial motor vehicles includes practices and procedures related to observing the condition of traffic before merging or changing lanes to ensuring that the merge or lane change can be made safely.

62. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

63. Reasonably safe motor carriers never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

64. Defendant Dhillon's careless, negligent, willful, wanton, reckless, and unlawful acts directly and proximately caused Plaintiffs' harms and losses in one or more of the following particulars by refusing to use reasonable care by:

   a. refusing to design, develop, and implement adequate safety management controls related to maintaining lanes, having a plan for dealing with hazards, and to observing traffic conditions, distracted driving, and driving while fatigued;

   b. refusing to train Defendant Singh in the well-known dangers of not maintaining lanes, not having a plan for dealing with hazards, and refusing to observe traffic conditions, distracted driving; and driving while fatigued;

   c. refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Singh;

   d. refusing to properly instruct its drivers, employees, and/or agents, specifically Defendant Singh;

   e. refusing to comply with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

   f. improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically Defendant Singh;

      g.    refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Singh for compliance with company polices and/or state and federal regulations;

      h.    allowing Defendant Singh to operate a commercial motor vehicle despite having knowledge of his inability to do so safely;

      i.    allowing Defendant Singh to operate a commercial motor vehicle despite having knowledge that he was not licensed;

      j.    refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard;

      k.    refusing to utilize available technology to monitor and audit the safety performance of its drivers, including Defendant Singh; and

      l.    negligently hiring, training, and supervising Defendant Singh.

65. Defendant Dhillon's careless, negligent, willful, wanton, reckless, and unlawful acts were the direct and proximate cause of the collision and Plaintiffs' resulting harms and losses.

## VII.    DAMAGES

66. As a direct and proximate result of the collision making the basis of this lawsuit, Plaintiffs suffered and will in all reasonable probability continue to suffer the following actual damages, the dollar value of which exceeds the minimal jurisdictional limits of this Court:

      a.    Medical treatment in the past;

      b.    Medical treatment which will be necessary in the future;

      c.    Past and future pain and suffering;

      d.    Past and future mental anguish;

      e.    Physical disfigurement;

   f.  Past and future impairment;

   g.  Lost wages; and

   h.  Loss of past and future earning capacity.

67. Plaintiffs plead for punitive damages against Defendants.

68. Plaintiffs plead for all other damages, pecuniary or otherwise, arising out of law or equity, that they may be justly and equitably entitled to, in the wisdom of the Court.

### VIII. PLAINTIFFS' DEMAND FOR JURY TRIAL

69. Plaintiffs asserts their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### IX. PRAYER

70. Plaintiffs request that Defendants be cited in terms of law to appear and answer this Complaint; that upon final trial, Plaintiffs have judgment against Defendants for the amount of actual damages and for other and different amounts as she shall show proper amendment before trial; and for such other relief, at law and in equity, both general and special, to which Plaintiff may show herself entitled to and to which the Court believes them deserving.

Respectfully submitted,

**ZINDA LAW GROUP, PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
(480) 442-6990 Office
(512) 580-4252 Fax
**Service of Documents:** service@zdfirm.com

By: _____
S. Burgess Williams, State Bar No. 032916
Ariana Byrd, State Bar No. 034391
**ATTORNEYS FOR PLAINTIFFS**